**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| TYANNA QUALLS, ) | | |
| on behalf of plaintiff and the ) | | |
| class members described below, ) | | |
| ) | | |
| Plaintiff, ) | No: 1:11-cv-05465 | |
| ) | | |
| v. ) | Honorable Charles R. Norgle, Sr. | |
| ) | | |
| ALPINE DIRECT SERVICES, LLC ) | | |
| DANIEL KOETTING and ) | | |
| JAINO PEREZ, ) | | |
| ) | | |
| Defendants. ) | | |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO APPOINT
ARBITRATOR AND TO STAY PROCEEDINGS AND COMPEL ARBITRATION**

In the Loan Note and Disclosure ("Loan Note") that Plaintiff signed with Alpine Direct Services, LLC ("Alpine"), Plaintiff unambiguously agreed to arbitrate all disputes with Alpine, its employees, officers and directors.[1] In so doing, she did not waive any relief, damages or attorneys' fees. She did, however, forego the ability to avail herself of the class action procedural vehicle. *As the United States District Court for the Northern District of Illinois held in another case involving this exact arbitration agreement and counsel*, because the parties' designated arbitrator can no longer hear the dispute, Section 5 of the Federal Arbitration Act requires the Court to appoint a new arbitrator.[2] Alpine respectfully requests that the Court do so, and that these proceedings be stayed pending arbitration.

**I.      STATEMENT OF FACTS**

Alpine is a Nevada limited liability corporation with its principal place of business in Nevada. Alpine does not, and at all times relevant to Plaintiff's Complaint did not, (a) have any

---

[1] A true and correct copy of Plaintiff's Loan Note is attached hereto as Exhibit 1.
[2] *Alexander v. Pack Management Group, LLC,* No. 1:11-cv-503 (filed Jan. 28, 2011).

facilities, employees or assets of any kind in Illinois; (b) advertise in the State of Illinois; or (c) operate a website or otherwise solicit loans from Illinois residents. Mr. Koetting and Mr. Perez are officers of Alpine. They each reside outside of, and are citizens of, a state other than Illinois.

On or about February 3, 2010, she signed a loan agreement that contained a comprehensive agreement to arbitrate all disputes on an individual basis (the "Arbitration Agreement"). The Arbitration Agreement is consumer-friendly and does not contain any waiver of rights or damages. Additionally, the Arbitration Agreement provides that Alpine will pay all fees and costs of arbitration. While the Arbitration Agreement provides that any dispute be adjudicated "by and under the Code of Procedure of the National Arbitration Forum" ("NAF"), the Arbitration Agreement does not contain any punitive measures for seeking relief in another forum.

On July 5, 2011, Plaintiff filed this putative class action.[3] Because the NAF no longer considers consumer arbitrations, Alpine seeks appointment of a substitute arbitrator and a stay of these proceedings pending arbitration.

## II. ARGUMENT

The Federal Arbitration Act ("FAA"), 9 U.S.C.S. § 1 *et seq.*, creates a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act. The United States Supreme Court held, "[w]e are mindful of the FAA's purpose to reverse the longstanding judicial hostility to arbitration agreements."[4] The FAA "'is a congressional declaration of a liberal federal policy favoring arbitration agreements' and '[] questions of arbitrability must be addressed with a healthy regard for the federal policy favoring

---

[3] Alpine disputes all claims contained in Plaintiff's Complaint, and would if called upon file an opposition to Plaintiff's motion for class certification.
[4] *Green Tree Financial Corp. v. Randolph*, 531 U.S. 79, 89, 121 S.Ct. 513, 521, 148 L.Ed.2d 373 (2000).

arbitration."[5] Importantly, judicial review is limited to the terms of the agreement to arbitrate – *not* the terms of the underlying agreement containing it.[6] "As a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."[7]

Because the Arbitration Agreement at issue here is clearly disclosed, consumer-friendly and fully enforceable under the governing law, the Court must enforce it. Additionally, as the parties' designated arbitrator is unavailable, Section 5 of the FAA requires the Court to appoint a new arbitrator and refer this matter to individual arbitration.

### A. In An Action Involving This Very Arbitration Agreement, The Northern District Of Illinois Appointed A Substitute Arbitrator And Enforced This Arbitration Agreement On An Individual Basis.

In an action involving this very arbitration agreement these claims asserted here, the United States District Court for the Northern District of Illinois recently held that Section 5 of the FAA required it to appoint a substitute arbitrator, and that this arbitration agreement was fully enforceable on an individual (and not class) basis.[8] The Edelman firm, counsel for Plaintiff here, also represented the plaintiff in that case.[9] Under these circumstances, Plaintiff cannot credibly contend that her claims are not subject to binding individual arbitration.

As here, the plaintiff in *Alexander v. Pack Management Group, LLC* obtained a short-term "payday loan" from the defendant. Ms. Alexander filed a putative class action complaint

---

[5] *Continental Cas. Co. v. Am. Nat'l Ins. Co.*, 417 F.3d 727, 730-731 (7th Cir. 2005) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24, 103 S. Ct. 927, 74 L.Ed.2d 765 (1983)).

[6] *Buckeye Check Cashing v. Cardegna*, 546 U.S. 440, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006); *Int'l Brotherhood of Elec. Workers, Local 21 v. Illinois Bell Telephone Co.*, 491 F.3d 685, 688 (7th Cir. 2007). Alpine anticipates that Plaintiff may decry the interest rate of her loan. Following *Cardegna*, however, the Court's review is limited to the terms of the Arbitration Agreement – not the underlying loan agreement.

[7] *Continental Cas. Co.*, 417 F.3d at 730-731 (quoting *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25).

[8] *Alexander v. Pack Management, supra,* note 2.

[9] Undersigned counsel represented the defendants in *Pack Management*.

alleging violations of the Interest Act and the Payday Loan Reform Act / Consumer Fraud Act.[10] Based on the arbitration agreement contained in her loan agreement, which is ***identical in all respects to that here***, Pack Management filed a motion seeking the appointment of a substitute arbitrator and enforcement of the arbitration agreement on an individual (not class) basis.[11] Following the decision of the United State Supreme Court in *Concepcion v. AT&T Mobility, LLC*[12] and in accordance with the mandate of Section 5 of the FAA, on June 9, 2011 the Court granted Pack Management's motion in its entirety.[13]

Having considered these same claims and this very arbitration agreement, a court authoritative in this district unambiguously held that the FAA required it to appoint a substitute arbitrator and stay the matter pending arbitration on an individual basis. This Court should heed this binding precedent and enter an order compelling individual arbitration.

> **B. The FAA And This Court's Precedent Require The Court To Appoint A Substitute Arbitrator.**

Where, as here, the parties' designated arbitrator is unavailable or unwilling to arbitrate, Section 5 of the FAA[14] provides a mandatory mechanism for substituting an arbitrator.

Congress enacted Section 5 "to provide a solution to the problem caused when the arbitrator selected by the parties cannot or will not perform."[15] Substitution is not discretionary, and Section 5 preempts conflicting state law. As one federal court explained, "it is difficult to

---

[10] A true and correct copy of Ms. Alexander's Complaint is attached hereto as Exhibit 2. Ms. Alexander also alleged a violation of the federal RICO Act, and later amended her complaint to allege a violation of the federal Electronic Funds Transfer Act.

[11] A true and correct copy of Ms. Alexander's loan agreement is attached hereto as Exhibit 3. A "redline" document, reflecting the minor variations between Ms. Alexander's loan agreement and Plaintiff's Loan Agreement is attached hereto as Exhibit 4. As the redline makes clear, the two arbitration agreements are identical.

[12] *AT&T Mobility v. Concepcion,* 563 U.S. ___ (2010) (slip op.).

[13] A true and correct copy of the Court's Order is attached hereto as Exhibit 5.

[14] *See* 9 U.S.C. § 5.

[15] *Astra Footwear Indus. v. Harwyn Int'l Inc.*, 442 F. Supp. 907, 910 (S.D.N.Y. 1978), aff'd, 578 F.2d 1366 (2d Cir. 1978).

justify the abrogation of an entire arbitration agreement, especially when Congress has provided in the Federal Arbitration Act an easy remedy for an arbitrator's unavailability."[16]

### 1. The Seventh Circuit Court of Appeals And This Court Have Both Repeatedly Appointed Substitute Arbitrators When The Parties' Designated Arbitrator Is Unavailable.

In a wide variety of circumstances and relying on the savings clause in Section 5, this honorable Court and the Seventh Circuit Court of Appeals have not hesitated to step in and require the appointment of a substitute arbitrator when necessary. These cases include:

- *Lumbermans Mut. Cas. Co. v. Broadshire Management Servs., Inc.*[17] The parties' arbitration agreement required them to submit their dispute for arbitration by "an independent accounting or appraisal firm of national reputation mutually acceptable to [the parties] or . . . to PriceWaterhouse Coopers LLP [("PwC")]" if the parties were unable to agree on an arbitrator. The parties could not agree on an arbitrator and PwC declined to adjudicate it. "Thus, the Court must now determine if and how the parties are to resolve the purchase price dispute after the recusal of PwC. Section 5 of the Federal Arbitration Act provides the answer. This section specifically authorizes a court to designate and appoint an arbitrator if for any reason there is a 'lapse in the naming of an arbitrator ... or filling a vacancy.' [citations]. Here there is a vacancy created by the recusal of PwC and the inability of the parties to agree on a replacement. Accordingly, the Court will provide for the filling of the vacancy. The Court orders the parties to submit within ten (10) days two names each of 'independent accounting or appraisal firm[s] of national reputation' to replace PwC. The Court gives the parties seven (7) days after the submission to make specific objections to the other's submissions. The Court will select one firm from the four."[18]

- *Jackson v. The PayDay Loan Store of Illinois, Inc.*[19] In *Jackson,* a putative class of payday loan borrowers alleged violations of state and federal consumer lending statutes. "Even if none of the three named arbitrators in the Agreement are willing to administer the arbitration of this dispute, the FAA itself provides for a mechanism by which that gap may be filled and the Agreement upheld. Section 5 of the FAA states that if, for any reason, there is 'a lapse in the naming of an arbitrator or arbitrators ... then upon the application of either party to the controversy the court shall designate and appoint an arbitrator or arbitrators ... who shall act under the said agreement with the same force and

---

[16] *Adler v. Dell Inc.,* No. 08-cv-13170, 2009 WL 4580739, at *4 (E.D. Mich. Dec. 3, 2009).
[17] *Lumbermans Mut. Cas. Co. v. Broadshire Management Servs., Inc.*, No. 07-c-0386, 2008 WL 1774565 (N.D. Ill. April 15, 2008).
[18] *Id.* at *2.
[19] *Jackson v. The PayDay Loan Store of Illinois, Inc.*, No. 09-c-4189, 2010 WL 1031590 (N.D. Ill. Mar. 17, 2010).

5

effect as if he or they had been specifically named therein.' [citing 9 U.S.C. § 5]. . . . The Court finds that the plain language of the FAA is more persuasive than the [contrary] cases upon which Plaintiffs rely, and that a neutral arbitrator may be appointed at the parties' request should both the AAA and JAMS decline to handle this arbitration."[20]

- ***Schulze and Burch Biscuit Co. v. Tree Top, Inc.***[21] "Even if the parties' prior dealings did not dictate who would arbitrate the dispute, this Court is authorized to designate and appoint an arbitrator upon either parties' application. 9 U.S.C. § 5. Section 5 grants this Court the authority to designate and appoint an arbitrator who shall act under the arbitration agreement with the same force and effect as if the arbitrator had been specifically named in the arbitration agreement. Consequently, this Court rejects plaintiff's contention that the motion to stay proceedings must be denied because the arbitration agreement does not specify the arbitrator."[22]

- ***Zechman v. Merrill Lynch, Pierce, Fenner & Smith, Inc.***[23] By virtue of their membership in the Chicago Board of Trade ("CBOT"), the parties were obligated to "submit [their dispute] to arbitration in accordance with regulations prescribed by the Board." After the CBOT declined to hear the dispute, the Court appointed a substitute arbitrator, holding that, "[a]lthough the role from which the CBOT has recused itself is not clear to this court, it seems quite possible that its refusal to accept jurisdiction means only that it will not coordinate the requested arbitration. Given this court's experience with arbitration, we suspect that, had the CBOT's participation continued, the actual arbitration power would have been vested in some independent party selected from the CBOT's list of arbitrators. To the same extent that this independent party can proceed in accordance with CBOT regulations, the 'neutral arbitrators' requested by Merrill Lynch can be so bound."[24]

Given the unambiguous requirements of Section 5 and this ample precedent, the Court should appoint a substitute arbitrator and refer this matter to individual arbitration.[25]

### 2. Other Courts Have Done Likewise.

In at least four other cases, other courts have likewise appointed a substitute arbitrator for the NAF. These cases include:

---

[20] *Id.* at *4.
[21] *Schulze and Burch Biscuit Co. v. Tree Top, Inc.*, 642 F. Supp. 1155 (N.D. Ill. 1986).
[22] *Id.* at 1157.
[23] *Zechman v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 742 F.Supp 1359 (N.D. Ill. 1990).
[24] *Id.* at 1365.
[25] *See also Wellpoint, Inc. v. John Hancock Life Ins. Co.*, 576 F.3d 643 (7th Cir. 2009); *Jain v. Mere*, 51 F.3d 686 (7th Cir. 1995); *Trustmark Ins. Co. v. Clarendon Nat. Ins. Co.*, No. 09-c-6169, 2010 WL 431592 (N.D. Ill Feb. 1, 2010).

- ***Adler v. Dell, Inc.***[26] The arbitration agreement in *Adler* provided that any disputes, "shall be resolved exclusively and finally by binding arbitration administered by the national arbitration forum (NAF)." Discussing another case, the Court noted "[t]hat finding overlooks the actual, mandatory language of the statute in § 5. '... or in filling a vacancy, then upon the application of either party to the controversy the court *shall* designate and appoint an arbitrator . . . .'"[27] The court noted that Section 5 makes no mention of "parsing" the parties' intent, but instead "[t]he tone of the FAA certainly implies that Congress intended that arbitration remain the prevailing method of resolving disputes if one of the parties requests arbitration."[28] The agreement "does not allow for litigation in the event NAF is unavailable to act" and consistent with the FAA's liberal policy favoring enforcement of agreements to arbitrate, "[t]he unavailability of NAF to hear the arbitration should not frustrate the overriding intent to arbitrate."[29]

- ***Jones v. GGNSC Pierre, LLC.***[30] In *Jones,* the parties designated the NAF arbitrator in their agreement, providing that the arbitration would be conducted "in accordance with the National Arbitration Forum Code of Procedure."[31] This constituted an "implicit selection of the NAF as the arbitration forum."[32] But designation of the NAF was not "integral" to the arbitration agreement. Inclusion language in the arbitration agreement that disputes were to be resolved "not by lawsuit or resort to court process" indicated that the emphasis was more on arbitration, and less on the arbitrator.[33] And testimony by the plaintiff to the effect that she did not remember the arbitration provision when she signed the agreement further indicates that designation of the NAF was not "integral."[34] That being the case, the court held that Section 5 authorized it to appoint a substitute arbitrator.

Additionally, in both *Chambers v. Dollar Finan. Group*[35] and *Levy v. Cain, Watters & Assoc., P.L.L.C.*[36], federal courts in two different judicial districts – Ohio and California, respectively – each enforced arbitration agreements that designated the NAF as sole arbitrator.

---

[26] *Adler, supra,* note 16.
[27] *Id.,* 2009 WL 4580739 at *4 (criticizing *Cairdeo v. Dell, Inc.*, 2009 WL 3485933 (W.D.Wash. Oct. 26, 2009) and quoting Section 5; emph. in original).
[28] *Id.*
[29] *Id.*
[30] *Jones v. GGNSC Pierre, LLC*, 684 F.Supp.2d 1161 (D.S.D. 2010).
[31] *Id.* at 1163.
[32] *Id.* at 1167.
[33] *Id.*
[34] *Id.* at 1168.
[35] *Chambers v. Dollar Finan. Group*, No. 2:09-cv-01587-GEB-JFM, 2010 WL 457433 (E.D. Cal. Feb. 3, 2010).
[36] *Levy v. Cain, Watters & Assoc., P.L.L.C,* No. 2:09-cv-723, 2010 WL 271300 (S.D. Ohio Jan. 15, 2010).

These facts are on all fours with those here. The parties' Arbitration Agreement here provides that any dispute "shall be resolved by binding individual (and not joint) arbitration by and under the Code of Procedure of the National Arbitration Forum ("NAF") in effect at the time the claim is filed."[37] As in *Jones*, the emphasis is on the NAF's Rules and procedure, rather than the forum.[38] And as the *Levy* and *Chambers* courts noted, a neutral substitute arbitrator could conduct arbitration pursuant to the NAF Rules. Designation of the NAF as arbitrator is not "integral," and Section 5 requires the Court to appoint a substitute arbitrator.

### 3. Although Illinois State Law Does Not Hold To The Contrary, Section 5 Of The FAA Would Preempt Any Conflict.

In her response, Plaintiff may argue that the decision of the Illinois Supreme Court in *Carr v. Gateway* requires this Court to strike the parties' Arbitration Agreement in its entirety.[39] However, *Carr* is (1) preempted by Section 5 of the FAA and (2) distinguishable on its facts.

#### a. To The Extent It Conflicts With Section 5, *Carr* Is Preempted.

As a matter of substantive federal law, Section 5 preempts conflicting state law. While this Court does not appear to have addressed the issue, at least one federal court has so held. In *Jones v. GGNSC Pierre, LLC*,[40] the parties were presented with the same issue here: whether designation of the NAF as arbitrator rendered the agreement unenforceable. The court held that it did not. Specifically, because the South Dakota statute addressing the substitution of an arbitrator was coextensive with Section 5, the court held that it ***was not*** preempted:

> State law is "preempted to the extent that it actually conflicts with federal law-that is, to the extent that it 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" Here, [the South Dakota

---

[37] *See* Loan Note.
[38] While the Arbitration Agreement also provides that the arbitration demand shall be filed with the NAF, this is no different than in *Jones*.
[39] *Carr v. Gateway, Inc.*, – N.E.2d –, 2011 WL 329115 (Ill. Feb. 3, 2011).
[40] *Jones v. GGNSC Pierre, LLC*, 684 F.Supp.2d 1161 (D.S.D. 2010).

8

statute] does not stand as an obstacle to the Federal Arbitration Act and thus is not preempted.[41]

By contrast, *Carr* is preempted as it imposes duties on the court other than those expressly set forth in Section 5. Section 5 provides a mechanical, automatic mechanism for replacing an unavailable arbitrator. It obligates the Court to determine whether the arbitrator is unavailable and, if so, to appoint a substitute. As the *Adler* court noted, "the FAA omits any mention of parsing through the parties' intent. . . . The tone of the FAA certainly implies that Congress intended that arbitration remain the prevailing method of resolving disputes if one of the parties requests arbitration."[42] The *Carr* decision requires the very type of court inquiry that the FAA was intended to remove, and is therefore preempted.

                b.      *Carr* **Does Not Hold That Designation Of The NAF As Arbitrator Renders An Arbitration Agreement Unenforceable.**

Nor did the *Carr* court hold that designation of the NAF as arbitrator automatically renders an arbitration agreement unenforceable. The court recognized that other courts had relied on Section 5 to uphold arbitration clauses where the designated arbitrator was unavailable – particularly, the *Zechman*[43] and *Adler* courts.[44] The Court stated that, "We agree with [appellant] that the mere fact parties name an arbitral service to handle arbitrations and specify rules to be applied does not, standing alone, make that designation integral to the agreement."[45] This reading would render Section 5 superfluous and encourage the parties to be as vague as possible when drafting their arbitration agreements.

---

[41]    *Id.* at 1165 (*quoting Hines v. Davidowitz,* 312 U.S. 52, 67, 61 S.Ct. 399, 85 L.Ed. 581 (1941)).
[42]    *Adler,* 2009 WL 4580739, at *4.
[43]    *Zechman, supra,* note 23.
[44]    *Adler, supra,* note 16.
[45]    *Carr,* 2011 WL 329115 at *8.

The dispositive factor in *Carr* was the inclusion of an *in terrorem* clause that required any party bringing a dispute in a forum other than the NAF to pay the other party all of its attorneys' fees and costs associated with enforcing compliance with the arbitration agreement. Here, the parties' Arbitration Agreement does not have this *in terrorem* clause.[46] By its own admission, the *Carr* court made no finding as to whether a substitute arbitrator could conduct an arbitration pursuant to the NAF Rules. In light of Section 5 and the "liberal federal policy favoring arbitration agreement," *Carr* is inapposite.

### C. *Concepcion* Requires This Court To Enforce Plaintiff's Arbitration Agreement On An Individual (Not Class) Basis.

The United States Supreme Court was clear: the FAA requires that a consensual agreement to arbitrate on an individual (and not class) basis must be enforced.[47] To the extent that a state's law requires otherwise, that law is preempted by the FAA.

*Concepcion* involved a consumer dispute over a $30.22 charge in a cellular telephone bill. Relying on the California Supreme Court's decision in *Discover Bank v. Superior Court*,[48] the district court denied the defendant's motion to compel arbitration. The Ninth Circuit Court of Appeals later affirmed, finding the prohibition on class actions contained in the parties' agreement was unconscionable, and that *Discover Bank* was not preempted by the FAA.

The United States Supreme Court reversed, holding that Section 2 of the FAA preempted *Discover Bank*:

---

[46] While the "Agreement Not To Bring, Join or Participate in Class Actions" does require Plaintiff to pay the costs associated with enforcing it, that provision only applies to class actions. Where an action is filed in court on an individual basis, Plaintiff is not required to pay any costs associated with enforcing the agreement to arbitrate.
[47] *Concepcion, supra* note 12.
[48] *Discover Bank v. Superior Court,* 36 Cal.4th 148, 30 Cal.Rptr.3d 76, 113 P.3d 1100 (Cal. 2005)

> The overarching purpose of the FAA, evident in the text of §§ 2, 3, and 4, is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings. Requiring the availability of class wide arbitration interferes with fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA.[49]

The Supreme Court was clear: a court may not condition enforcement of agreements to arbitrate on the availability of class-based relief. "The conclusion follows that class arbitration, to the extent it is manufactured by *Discover Bank* rather than consensual, is inconsistent with the FAA."[50] Following *Concepcion,* not only is the availability of class-based relief no longer a factor in the unconscionability analysis, but the Court also must enforce the parties' Arbitration Agreement as drafted – that is, by requiring arbitration here on an individual basis.[51]

"Arbitration is a matter of contract, and the FAA requires courts to honor parties' expectations."[52] Here, the parties agreed to arbitrate on an individual, not class, basis. The parties' intent must be given effect.

### D. The Arbitration Provisions of the Loan Note Are Enforceable Under Either Nevada Or Illinois Law.

Leaving aside the fact that the Arbitration Agreement requires Plaintiff to resolve "any claim arising from or relating to . . . this agreement to arbitrate all disputes" in arbitration, the Arbitration Agreement is fully enforceable under both Illinois and federal law.[53]

---

[49] *Id.* (slip op., at 9).
[50] *Id.* (slip op., at 13).
[51] Prior to *Concepcion*, there was no substantive "right" to class arbitration under the FAA. The United States Supreme Court made this clear in its decision in *Stolt-Nielsen, S.A. v. AnimalFeeds Intern. Corp.*, __ U.S. __, 130 S.Ct. 1758, __ L.Ed.2d __ (2010), where it held that unless the parties to an arbitration agreement expressly and affirmatively **consent** to proceed on a class basis, the court **may not** compel class arbitration.
[52] *Concepcion*, *supra* note 12 (slip op., at 17) (*citing Rent-A-Center, West, Inc. v. Jackson*, *Id.* (slip op., at 3).
[53] While the parties agreed that Nevada law applies, due to space limitations only Illinois law is discussed. Alpine will provide analysis of Nevada law if the Court desires.

11

### 1. The Arbitration Agreement Is Not Procedurally Unconscionable.

Procedural unconscionability exists where there is "some impropriety during the process of forming the contract."[54] In determining whether procedural unconscionability exists, courts look to whether the arbitration terms are difficult to find, read, or understand, such that plaintiff cannot fairly be said to have been aware she was agreeing to them.[55] To a lesser extent, courts consider the bargaining power of the parties.[56]

Here, the Arbitration Agreement was clearly disclosed, in plain English. Its terms were clearly and conspicuously disclosed in capitalized and underlined font, such that they could not be missed or ignored by Plaintiff. The Arbitration Agreement was prominently disclosed in underlined letters: "Arbitration Of All Disputes." In order to receive her loan proceeds, Plaintiff was required to electronically sign Loan Note, whereby she confirmed the following: "YOU AGREE TO ALL THE TERMS OF THIS NOTE, INCLUDING THE AGREEMENT TO ARBITRATE ALL DISPUTES AND THE AGREEMENT NOT TO BRING, JOIN OR PARTICIPATE IN CLASS ACTIONS."[57] Immediately below, she was instructed to read the Loan Note in its entirety. These and several other sections of the Loan Note alerted Plaintiff that any dispute with Alpine was subject to mandatory binding arbitration.

Nor may Plaintiff argue that she was pressured to execute the Loan Note, or otherwise entered into the agreement under duress. Plaintiff voluntarily sought out this loan on her own over the Internet, without any advertising or solicitation by Alpine, and was presented with the

---

[54] *Frank's Maintenance Engineering v. C. A. Roberts Co.*, 408 N.E.2d 403, 409-410 (1st Dist. 1980).
[55] *Kinkel v. Cingular Wireless, LLC*, 857 N.E.2d 250, 264 (Ill. 2006).
[56] *Id.*
[57] *See* Loan Note.

Application and Loan Note electronically. She was free to walk away at any point by shutting off her computer.

Finally, Plaintiff possessed numerous other financial alternatives other than Alpine. She was free to obtain a loan from another financial service provider, including banks, installment lenders, pawn shops, car title lenders, and credit cards, to name a few. She did not.[58]

The Arbitration Agreement was (1) clearly disclosed in plain English; (2) flagged with underlined, capitalized font; and (3) set forth all the terms of the Arbitration Agreement in one succinct paragraph. The terms are not illegible, indiscernible or set forth in a manner meant to confuse.[59] To the contrary, they contain conspicuous captions, are printed in the same size font as the rest of the Loan Note, and are certainly not "hidden in a maze of fine print."[60] The Arbitration Agreement is not substantively unconscionable.

### 2. The Arbitration Agreement Is Not Substantively Unconscionable.

Nor can Plaintiff argue that the Arbitration Agreement is substantively unconscionable. Substantive unconscionability,

> concerns the actual terms of the contract and examines the relative fairness of the obligations assumed. Indicative of substantive unconscionability are contract terms so one-sided as to oppress or unfairly surprise an innocent party, an overall imbalance in the obligations and rights imposed by the bargain and significant cost-price disparity.[61]

Plaintiff cannot establish that arbitration is prohibitively expensive because the Arbitration Agreement requires that Plaintiff's arbitration fees be waived if she cannot afford

---

[58] *See e.g. Saunders v. Michigan Ave. Nat'l Bank*, 662 N.E.2d 602, 611 (1st Dist. 1996) (allegedly onerous terms in credit card agreement were enforceable because the plaintiff "was free to select from a multitude of other Banks with a variety of services and fees"); *Larned v. First Chicago Corp.*, 636 N.E.2d 1004, 1006 (1st Dist. 1994) ("the Visa card agreement is not an adhesion contract since [the plaintiff] freely chose to obtain this Visa card from among a number of other credit cards offering similar benefits.").
[59] *See Kinkel v. Cingular Wireless LLC*, 857 N.E.2d 250, 264 (2006).
[60] *Id.*
[61] *Id.* at 267.

13

them, and Alpine is contractually obligated to pay for the cost of any hearing. In order to proceed in this Court, Plaintiff was required to pay approximately $400 for filing fees and service of process. By contrast, Plaintiff incurs *no cost* to proceed in arbitration, making arbitration *less expensive* than litigation. The Arbitration Agreement contains no limitations on the claims Plaintiff may bring, or on her recovery: actual, statutory and punitive damages are all available, along with injunctive, declaratory and whatever other relief is available to Plaintiff in this Court. To the extent allowed by law, Plaintiff may recover all of her attorney's fees and costs should she "substantially prevail" in the arbitration.[62]

The Arbitration Agreement is also devoid of any substantively unconscionable forum-selection clause. Rather, the Arbitration Agreement stipulates that the arbitration will be held "near Plaintiff's residence." Finally, the terms of the Arbitration Agreement are not "one-sided." To the contrary, they are entirely mutual. There are no "carve-outs" allowing for resolution of certain claims other than in arbitration. Manifestly, Plaintiff cannot carry her burden of establishing that the Arbitration Agreement is substantively unconscionable.

### 3. The Class Prohibition Does Not Render The Arbitration Agreement Substantively Unconscionable.

As the United States Supreme Court held in *Concepcion,* the Court may not condition arbitration on the availability of class relief. That notwithstanding, as set forth above, the Loan Note provides Plaintiff with sufficient incentives to prosecute her claim on an individual basis. "Although less likely than as a class representative, with attorney's fees available, [plaintiff] may

---

[62] *See Arellano v. Household Finance Corp. III*, 2002 WL 221604, *3 (N.D. Ill. 2002) (arbitration agreement not substantively unconscionable where "plaintiff will not be required to bear prohibitive arbitration costs in order to pursue his claims").

14

be able to find a lawyer willing to represent him on an individual claim in arbitration."[63] The class prohibition does not render the Arbitration Agreement substantively unconscionable.

### III. CONCLUSION

Because the arbitrator selected by the parties will not hear this dispute, Section 5 of the FAA and controlling precedent require the Court to appoint a substitute. Once the Court does so, Plaintiff is bound by her agreement to arbitrate on an individual basis.

Respectfully Submitted,

Dated: August 12, 2011

By: /s/ Michael Lohnes

Michael Lohnes
KATTEN MUCHIN ROSENMAN LLP
525 West Monroe Street
Chicago, IL 60661
Telephone:  (312) 902-5341
Facsimile:  (312) 577-4721
michael.lohnes@kattenlaw.com

Claudia Callaway
Michael White
Julian Dayal
KATTEN MUCHIN ROSENMAN, LLP
2900 K Street, NW
North Tower - Suite 200
Washington, DC 20007
Telephone:  (202) 625-3590
Facsimile:  (202) 295-1120
claudia.callaway@kattenlaw.com
michael.white@kattenlaw.com
julian.dayal@kattenlaw.com

*Attorneys for Defendants Alpine Group, LLC, Daniel Koetting and Jaino Perez*

---

[63] *Quinn v. Comcast Corp.,* No 10-C-2491, 2010 Wl 4932665, at *6 (N.D. Ill. Nov. 29, 2010) (collecting cases).

15